|71 317|
|147 367|

## Barrett's Executor's Appeal.

1. An assignee for the benefit of creditors, alleging that a judgment of a creditor had been discharged, obtained an issue to determine the fact; all proceedings to stay, &c.—the jury found for the creditor; a motion for a new trial was made and held under advisement till the assignee's account should be settled, which being done it was referred to an auditor. The creditor appeared before him claiming the full amount of his judgment, and insisting on his legal rights. The report of the auditor was referred back to him; the creditor appeared again protesting against evidence being heard against the judgment and claiming its allowance. *Held,* not to be a waiver of his right to have the facts decided in the issue.

2. The creditor was not bound to demand a new issue, one having been decided in his favor.

3. *It seems* that the assignee was precluded from a hearing before an auditor until the issue had been finally determined, and that the court below could not allow him to withdraw the issue without the consent of the creditor.

March 22d 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Lehigh county*: No. 329, to January Term 1872.

In the distribution of the estate of David A. Smith, in the hands of James Weiler, his assignee, for the benefit of creditors.

On the 12th of May 1870 two judgments, No. 355 and No. 356, to April Term 1870, for $5000 and $10,000 respectively, were entered in the Court of Common Pleas of Lehigh county, on warrants of attorney in favor of Nathan Barrett against James Smith and David A. Smith.

On the 16th of May 1870, D. A. Smith assigned all his property for the benefit of his creditors to James Weiler. At the date of the assignment D. A. Smith owned real estate in Lehigh county appraised at $44,055, and jointly with James Smith owned real estate in Lycoming county; D. A. Smith's interest was appraised at $21,666.67. On the Lycoming county land, subsequent to liens of other parties, Nathan Barrett held mortgages for $5000 and $10,000, being the same debts for which the judgments were entered in Lehigh county. The Lycoming county land was sold by the sheriff for $12,000 on the 25th of August 1870, and after the payment of the preceding liens, $3130.96 were appropriated to Barrett's $5000 mortgage. Besides these mortgages D. A. Smith was indebted to Barrett on certain notes which were not secured.

[*Barrett's Executor's Appeal.*]

Barrett died in January 1871.

On the 5th of April 1871, Weiler, the assignee, presented a petition setting forth, amongst other things, that as he believed the whole or a portion of the $5000 and $10,000 judgments had been paid by the purchasers at the sheriff's sale of the Lycoming county property, by virtue of an agreement made between them and Barrett at or about the time of sale of the said land; the prayer was for an issue to try whether the judgments had been paid, and how much remains due,—all proceedings to stay in the meantime.

Upon this petition an issue was ordered.

The allegations of the assignee were, that at the sale of the Lycoming county property, there had been an agreement between the purchasers and Barrett, that if he would not bid against them, and give them time for the payment of their portion of the purchase-money, they would pay him the amount of his unsecured notes, and also his counsel fees; that these sums amounted to $4000, which should be deducted from the Lehigh county judgments.

On the trial of the issue the jury found for the plaintiff Barrett, the amount appearing to be due on the judgments, less the money received by him from the proceeds of the sheriff's sale in Lycoming county, viz: $2213.24 on No. 355, and $10,965 on No. 356. Weiler moved for a new trial, on which the court made the following order:—

"June 28th 1871, argued and opinion to be reserved until distribution be made in the assigned estate, if an account shall be filed in a reasonable time."

The assignee filed an account, August 15th 1871, which, on the same day, was referred to John Rupp, Esq., as auditor to "audit and resettle, and if necessary make distribution."

The auditor sat under his appointment on the 16th and 28th days of October 1871, and amongst other things reported:—

"Messrs. Bridges and Stiles on behalf of the estate of Nathan Barrett claimed the amount of judgment, Nos. 355 and 356, April Term 1870; No. 355 for $2213.24, and No. 356 for $10,965, with interest from June 14th 1871. The accountant's counsel called on Messrs. Bridges and Stiles, attorneys for said estate of Nathan Barrett, to say whether they would agree to submit to the auditor for decision, the questions raised in the feigned issues by the Court of Common Pleas in said judgments, or whether they would insist that they should be disposed of by the Court of Common Pleas. Messrs. Bridges and Stiles replied that they claimed the full amounts of said judgments out of the fund in the hands of the assignee already having judgments in the Common Pleas, and that they would stand upon their legal rights. Accountant's counsel then asked to have a certain amount set aside sufficient to

[Barrett's Executor's Appeal.]

cover the amount of said judgments with interest and costs, which is done by the auditor, the same to abide the final disposition of said feigned issues by the court, and the auditor set aside $17,000 to meet the claims of the Barrett estate;" and reported distribution of the balance.

Barrett's executors filed exceptions to the auditor's report, that he had not awarded to them the amount of the judgments.

On the 7th of November 1871, the court on the exceptions referred the report back to same auditor "generally." By the auditor's minutes it appeared thus:—

"Messrs. Wright and Erdman, counsel for assignee and creditors, object to the allowance of judgments No. 355 and No. 356 of April Term 1870, Nathan Barrett against James Smith and David A. Smith in the Court of Common Pleas of Lehigh county, for $5000 and $10,000 respectively, and propose to show that plaintiff received from the sheriff of Lycoming county out of the proceeds of sale of real estate of David A. and James Smith in August 1870, the sum of $3130.96, as well as the further sum of $4000, by an arrangement between Nathan Barrett, John F. Cottrell and Samuel Miller for and on account of the said judgments.

"Messrs. Bridges and Stiles appear for the estate of Nathan Barrett, deceased, for the purpose of objecting and protesting against all evidence concerning the judgments mentioned in the offer, and claim the full amount of said judgments with interest, and decline to submit any question to the auditor, except the allowance of said judgments. In an issue in the Court of Common Pleas of Lehigh county a verdict was rendered for the following sums on said judgments, to wit: June 14th 1871, verdict for $2213.24, and same day, verdict for $10,965, with interest thereon from date of verdict and costs. The question of new trial is pending in court in said cases, and therefore counsel for Barrett's estate object to all evidence under the offer of counsel for assignee and creditors; and further allege that while the question of new trial is yet in the hands of the court and undisposed of, the auditor has no jurisdiction; and further allege generally that the auditor has no jurisdiction except to allow and report the amount of the verdict on said judgments in full, with interest and costs. A great number of witnesses were called by the accountant—they were objected to severally by the counsel for Barrett's estate, and cross-examined under protest.

The evidence all related to the agreement alleged to have been made between Barrett and the purchasers at the sheriff's sale in Lycoming county. The auditor concluded, saying:—

"Taking all the evidence in this case and all the surrounding circumstances of the case together, the auditor finds as a fact that there was an arrangement or understanding between Nathan Barrett and Francis S. Fisher, the agent of Miller & Cottrell, before

21 P. F. SMITH—21

this sheriff's sale, that Barrett should not bid on this mill property, but should let Fisher buy it in, and should then let his money stand for one year, in consideration of which Miller & Cottrell were to pay Barrett's lawyer fees and expenses, and to pay or secure his notes against D. A. Smith and James Smith; that Barrett did not bid on the property, and that after Fisher, as agent for Miller & Cottrell, had become the purchaser of the property; this arrangement was consummated by Miller & Cottrell paying $800 for Barrett's lawyer fees and expenses, and giving him their mortgage on this property, accompanied by a bond and warrant for $6500, being his share of the proceeds of the sheriff's sale, and the $3200 notes with the interest due thereon. The next question then is, what is the effect of this? It is very plain that by this arrangement Barrett made nearly if not quite $4000. The defendants had a right to have their property sold for the highest price it would bring at a fair and open public sale, and any combination between Barrett and Fisher to prevent bidding on the property, was unlawful and a fraud upon the defendants. Had the facts of this case been known at the time of the sale, as they are now developed, it would have been good ground to set the sale aside. But that not having been done, can the assignee and creditors of D. A. Smith now take advantage of it, and have the amount thus secured to Nathan Barrett deducted from his judgments? This case seems to fall within the principle of the case of Young *v.* Stone, 4 W. & S. 45. In that case the Supreme Court say that the 'amount of money realized by the plaintiff in a judgment by means of a sheriff's sale of land, must be credited to the defendant, whether it be procured by a private contract with the purchaser or bid at the public sale.' If this be sound law, then whatever sum Barrett actually realized out of this sheriff's sale, either out of the $12,000 actually bid for the property at the sale, or by means of the private arrangement between him and Fisher, must be credited to the defendants on Barrett's mortgages on this property, and it is a satisfaction of these judgments for that amount. * * * Hence it will appear that on judgment No. 355 there is now actually nothing due, and on judgment No. 356 there is due the sum of $9,684.88.

Barrett's executors filed exceptions to the report of the auditor, and also made the following application January 3d 1872:—

"The counsel for the estate of Nathan Barrett, deceased, claim that issues are now pending in this court to ascertain the amount due upon the judgments of Nathan Barrett against David A. Smith, and ask the court to decide the motion for new trials, and we ask that all the questions involved in this controversy as to the amount due on said judgments be tried in said issue, or to grant a new issue upon the report of the auditor to try the same.

"February 5th 1872, the motion was denied by the court, the

exceptions to the auditor's report dismissed, and the report confirmed."

In his opinion confirming the report, Longaker, P. J., said:—

* * "Under the reference back, Messrs. Bridges and Stiles again appear for the estate of Nathan Barrett and protest against the admission of evidence to impeach the judgments of Barrett or to show a satisfaction of them in part, and object to the jurisdiction of the auditor while the issues remain undecided in the Common Pleas, but while thus protesting and objecting they demand a distribution of the fund so as to pay the judgments in full, denying to the auditor all right to inquire how much may be due on their demands. While such a protest presents a most strange anomaly in jurisprudence, it becomes a most convenient device, by which the payment of an unjust demand may be secured; it is an arrogant demand for payment, with a persistent refusal to permit an inquiry as to how much is due upon the claim presented. The law, however, tolerates no such arrogance. The presentation of the claims and a demand for payment, is totally inconsistent with the protest and objection, and the auditor therefore had a clear right to disregard them, and to treat the claim as presented for distribution, and to proceed to admit the testimony of the assignee to show that there was a *pro tanto* satisfaction. It will be remembered that the issues in the Common Pleas were instituted by the assignee, and I take it, that while it is the right of all parties to have a question of fact tried by a jury, he who does not ask for an issue cannot avail himself of the action taken by his adversary. The assignee had a clear right to insist on a trial of the issues, but he had also as clear a right to waive it; and having assented to a hearing before the auditor of the same subject-matter involved in the issues, he cannot now demand a trial in the Common Pleas. Had the issue of fact before the auditor been found against him, he could not invoke the verdicts found to set aside the finding of the auditor.. The absolute confirmation of the auditor's report would have operated as a decree to enforce payment of the judgments in full. If the pending motions for a new trial are made absolute, the verdicts on the issues are set aside, and the estate of Nathan Barrett will receive no more than is allowed in this distribution. Again, if a new trial shall be granted, it will be competent for the assignee to ask leave to withdraw the issues framed. Whether that can be done, or not, need not now be decided.

"It is undoubtedly well established by many decisions, that it is the plain right of every litigant to have questions of fact tried before a jury, but while such is his right he may waive it by submitting to the decision of an auditor. Had the exceptant refused to submit his claims to the auditor, and demanded in the Common Pleas an issue to try the disputed facts, it would have

[Barrett's Executor's Appeal.]

been the plain duty of the court to have awarded the issue, or else to have granted a new trial and proceeded to a second trial on the issues already framed.    As it is, he made his election to submit his judgment to the auditor for allowance, and the auditor having passed upon the disputed facts, it is now too late to ask the Court of Common Pleas to proceed on the issues pending or to grant new issues, as is asked for by the motion of January 30th 1872." * *

On the same day the court made the rule for a new trial absolute, saying :—

"We are satisfied that there was some agreement or understanding prior to or contemporaneous with the sheriff's sale, tacit though it may have been, that the purchasers were to assume the payment of certain promissory notes, and as that fact has been found subsequently by an auditor, upon testimony more explicit than that which was submitted to the jury, and as the auditor's report has been confirmed, there is an additional reason why a new trial should be granted."

The executors of Barrett appealed to the Supreme Court.

They assigned for error:—

1. Deciding that the auditor had jurisdiction in the matter of the judgments, inasmuch as they were liens on Smith's land before the assignment.

2. Deciding that the auditor had jurisdiction during the pendency of motions for a new trial.

3. Referring back the first report of the auditor.

5. Denying the request of the executors to decide the motion for a new trial on the issue, or to grant a new one on the report of the auditor.

The remaining errors related to the findings of facts by the auditor.

*J. W. Hunsicker, J. D. Stiles* and *S. A. Bridges*, for appellants.—The accountant could not withdraw the issue, although granted on his own application : McCredy *v.* Fey, 7 Watts 496 ; Bank *v.* Coryell, 9 W. & S. 153.    An auditor cannot go behind a judgment : Edwards's Appeal, 16 P. F. Smith 89.    An issue should have been awarded on the executor's application, which was not too late : Trimble's 'Appeal, 6 Watts 133 ; Lauman *v.* Yonng, 7 Casey 310.

*R. E. Wright, Jr., C. J. Erdman* and *R. E. Wright*, for appellees.—A party cannot take the chances of a favorable finding of facts by an auditor, and when the report was adverse apply for an issue; the application is too late if made after the result of the hearing before the auditor is ascertained : Bradford's Appeal, 5 Casey 513; Sharp's Appeal, 3 Grant 260 ; Barnes's Appeal, 18

Leg. Int. 156; Seip's Appeal, 2 Casey 176; Benson's Appeal, 12 Wright 159. An auditor may hear evidence and determine whether a judgment has been discharged since its entry: Borland's Appeal, 16 P. F. Smith 470.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—We do not propose to determine the merits of this controversy—the questions of fact and law as discussed and disposed of by the auditor and court below. We fail to see, as the learned judge saw, any waiver by the appellants of their right to have the questions of fact decided in the pending issue in the Common Pleas by appearing before the auditor. They appeared in the first instance under protest, insisting upon their legal rights. When they appeared again upon a reference back to the auditor, the court had suspended their opinion on the motion in the feigned issue " until the distribution be made in the assigned estate, if an account shall be filed in a reasonable time." The issue had been awarded on the petition of the assignee—the present appellee— and when awarded, all proceedings on the judgments were stayed until the feigned issue was decided; so that the hands of the appellants were tied by the orders of the court. Under such circumstances they cannot be held to have waived any legal right by appearing before the auditor. Nor were they bound to demand a new issue when one was already pending, upon which they had succeeded in obtaining a verdict in their favor. It would seem more reasonable to hold that the assignee was precluded from any other course than that which he had himself voluntarily adopted, without at least, with the approbation of the court, having the feigned issue in some way finally disposed of. It seems to us that the court ought not to allow him to withdraw it without the consent of the appellants. The only doubt we have entertained is, whether the appellants had any standing before the auditor, or in this court on appeal. The judgments of the appellants against David A. Smith were entered up in Lehigh county, May 11th 1870. The assignment was dated May 16th 1870. We presume, although the fact is not distinctly stated, that the fund in the hands of the assignee for distribution was the proceeds of real estate in Lehigh county sold by him. The judgments, if they were valid, were and continued to be liens on the lands in the hands of the purchasers. The contest should rather be with them. It is their business to see that these judgments are satisfied or set aside. If Weiler has undertaken to sell for an outside price, clear of all encumbrances, it would be at his risk if the liens were afterwards enforced against the land. Under the circumstances, however, the appellants having appeared before the auditor and claimed payment of the judgments out of this fund, may perhaps be held to have waived their liens as against the purchasers, and

[Barrett's Executor's Appeal.]

we think therefore they ought not to be precluded from the benefit of this appeal.

> Decree reversed, report set aside, and record remitted for further proceedings, when the issue pending in the Common Pleas shall be finally decided.